# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ANN ZARCZYNSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br>v.<br><br>ALLTRAN EDUCATION, INC.,<br><br>　　　　　　Defendant. | Case No.: 19-cv-721<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Ann Zarczynski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant Alltran Education, Inc. ("Alltran") is a foreign corporation with its primary offices located at 6506 South Lewis Avenue, Suite 260, Tulsa, OK 74136.

7. Alltran does substantial business in Wisconsin and has a registered agent for the purpose of service of process located at C T Corporation System, 301 South Bedford Street, Suite 1, Madison, WI 53703.

8. Alltran is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Alltran is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10. Alltran is a debt collector as defined in 15 U.S.C. § 1692a.

11. Alltran is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

## **FACTS**

12. At some point prior to February 26, 2019, Plaintiff entered into one or more consumer credit transactions with the United States Department of Education ("DoE") for a student loan. Upon information and belief, the student loan was a Federal Stafford Loan. *See* 34 CFR 674.

13. Federal Stafford Student Loan agreements are "consumer credit transactions" pursuant to the WCA. Wis. Stat. §§ 421-427; *see also Patzka v. Viterbo Coll.,* 917 F. Supp. 654, 659 (W.D. Wis. 1996).

14. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant

2

to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

15. Plaintiff's student loan contracts were for "services," namely educational services.

16. Plaintiff's student loans, as are all student loans, are extensions of "credit." Plaintiff obtained student loans to pay for tuition, fees, and educational materials. Wis. Stat. § 421.301(14) ("'Credit' means the right granted by a creditor to a customer to defer payment of debt, to incur debt and defer its payment or to purchase goods, services or interests in land on a time price basis.").

17. That the lender placed the loan for collection with Alltran, and that Alltran sent Plaintiff debt collection letters establishes that the lender intended repayment of the debt.

18. Plaintiff's student loan was subject to finance charges, including interest.

19. Pursuant to the loan agreement, the loan was payable in installments. Under a standard student loan contract, the consumer incurs an obligation to pay the balance in monthly installments, over the contract's term, and payments usually begin after the consumer has graduated or otherwise left school.

20. The third-party collection of federal student loans, including Federal Stafford Loans, is subject to the FDCPA. *See Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1035 n.2 (9th Cir. 2009).

21. On or about February 26, 2019, Alltran mailed a debt collection letter to Plaintiff regarding an alleged student loan debt. A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

22. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

3

23. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Alltran to attempt to collect alleged debts.

24. The header in <u>Exhibit A</u> contains the following representation:

```
ED Number:                          6540
Principal Balance:              $4524.22
Interest:                         $-11.73
Penalty Charges:                    $0.00
Fees & Costs:                   $1020.42
Total Balance:                  $5532.91
```

25. By itemizing "Penalty Charges," which are distinct from "Interest" and "Fees & Costs," <u>Exhibit A</u> implies to the unsophisticated consumer that the alleged debt referenced in <u>Exhibit A</u> may accrue additional "penalty" charges.

26. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> is not accruing any Penalty Charges and Defendant has not been authorized to add any Penalty Charges.

27. Furthermore, <u>Exhibit A</u> itemizes the "Interest" associated with Plaintiff's alleged debt as a negative amount, specifically $-11.73.

28. Indeed, the "Total Balance" listed in Exhibit A appears to be the sum of the "Principal Balance," "Penalty Charges," and "Fees & Costs," and also taking into account the negative amount listed as "Interest."

29. By listing a negative amount of interest, <u>Exhibit A</u> is facially misleading and confusing to the unsophisticated consumer. The consumer would understand that any previously received payments would not reduce an interest amount to less than zero, but would instead be applied to the debt's principal or fees & costs amounts.

4

30. On the face of Exhibit A, it is patently unclear whether payments are being applied to the actual balance or are being held in a suspense or escrow account to offset future interest.

31. The consumer would be confused as to how much Defendant was actually attempting to collect, whether or not the debt was accruing interest, and whether payments were being correctly applied.

32. Further, Exhibit A also states:

> As of the date of this letter, you owe the total balance due reflected above. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. As a result, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will contact you. For further information regarding your balance or interest charges, write the undersigned or call 888-377-5000.

33. The representation that "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater" is a material representation that Defendant or the creditor could add late charges to the balance. *See, e.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 368 (7th Cir. 2018).

34. The line-items for "Penalty Charges" and "Fees & Costs" further indicate that Defendant or the creditor may add late charges to the balance.

35. Exhibit A states that a "Total Balance" without stating a current installment payment amount.

36. Exhibit A represents that, at the time Exhibit A was mailed, the U.S. Department of Education had accelerated the balance of Plaintiff's Federal Stafford Loan.

37. Upon information and belief, at the time Exhibit A was mailed, Plaintiff's Federal Stafford Loan was in default, and the U.S. Department of Education had accelerated the balance.

38. The representation that Defendant or the creditor could add late charges to the balance of Plaintiff's defaulted Federal Stafford Loan after the debt was accelerated is false, deceptive, and misleading.

5

39. The Department of Education has promulgated a comprehensive set of regulations to implement and enforce federal student loan programs, including the Federal Stafford Loan program. *See* 34 C.F.R. § 682.

40. The implementing regulations govern, among other things, the charges that lenders may impose on borrowers. *See* 34 C.F.R. § 682.202.

41. 34 C.F.R. § 682.202(e) governs the imposition of late fees in the case of Federal Stafford Loans:

> (1) If authorized by the borrower's promissory note, the lender may require the borrower to pay a late charge under the circumstances described in paragraph (e)(2) of this section. This charge may not exceed six cents for each dollar of each late installment.
>
> (2) The lender may require the borrower to pay a late charge if the borrower fails to pay all or a portion of a required installment payment within 15 days after it is due.

42. The governing regulations authorize the imposition of a late charge in the event that the borrower fails to pay all or part of an *installment* within 15 days after payment is due.

43. Nothing in the governing regulations authorizes the imposition of a late charge after the debt has been *accelerated*.

44. The false representation that a debt may incur late charges when there is no authorization for such late charges is materially false and misleading to the unsophisticated consumer and violates the FDCPA. *Boucher*, 880 F.3d at 368; *see also, e.g., Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-cv-5646, 2016 U.S. Dist. LEXIS 102206, at *8 (D.N.J. Aug. 4, 2016) ("The Court agrees with Plaintiff that, because Plaintiff was in default on a Federal Perkins Loan, Defendant did not have the lawful right to add late charges at the time it sent the Letter to Plaintiff.") (citing 34 C.F.R. § 674.31(b)(5)(i); 34 C.F.R. § 674.43(b)(2)); *Rizzo*

6

*v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (collecting cases holding that "post-acceleration late fees are unlawful.").

45. As explained in *Hovermale*, 2016 U.S. Dist. LEXIS 102206, at *8, the authority governing late fees for Federal Perkins Loans is very similar to the authority governing late fees for Federal Stafford Loans. *See,* 34 C.F.R. § 674.43(b)(2).

46. As in *Hovermale*, after a loan has been accelerated, the entire balance becomes due, and there is no "installment payment" that can remain unpaid for more than fifteen days after it is due.

47. Once Plaintiff's Federal Stafford Loan became accelerated, there was no installment payment that could be subject to a late fee pursuant to 34 C.F.R. § 682.202(e).

48. Defendant had no authority or intention to add a late fee to the alleged debt referenced in Exhibit A.

49. Plaintiff was misled and confused by Exhibit A.

50. The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

51. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the

debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

52. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

53. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

54. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

55. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

56. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

57. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

*58.* 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

9

## *The WCA*

59. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

60. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

61. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

62. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

63. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

64. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

10

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

65. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

66. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

67. Wis. Stat. § 427.104(1)(c) states that a debt collector may not "Disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false."

68. Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information…."

69. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

11

70. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

71. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

72. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

73. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

74. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. By itemizing "Interest" as a negative amount, Exhibit A includes representations which are false, deceptive, misleading, and confusing as to the amount, character, and legal status of Plaintiff's alleged debt.

76. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT II – FDCPA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. The unsophisticated consumer would understand the references to "Penalty Charges," "Fees & Costs," and late fees as a representation that Defendant could, and would, add a late fee to the debt.

79. Defendant had no authority or intention to add late fees.

80. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT III – WCA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Alltran is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

83. Exhibit A contains false, deceptive, misleading, and confusing representations about the character, amount, and legal status of the debt.

84. Exhibit A contains false, deceptive, and misleading implied threats that Defendant will add late fees to the debt when such fees are not, and cannot be, added to debts like the alleged debt referenced in Exhibit A as a matter of course.

85. Exhibit A violates the FDCPA.

86. Defendant violated Wis. Stat. §§, 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

87. Plaintiff brings this action on behalf of two Classes.

88. Class I ("Negative Interest Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by Defendant, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) where the letter included a negative "Interest" line-item,

13

(e) and was mailed between May 14, 2018 and May 14, 2019, inclusive, (e) and was not returned by the postal service.

89. Class II ("False Late Fee Threat Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by Defendant, (c) seeking to collect a student loan debt, (d) incurred for personal, family, or household purposes, (e) which stated a "Total Balance" without stating a current installment amount, (f) and also stated that "because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater,"(e) where the letter was mailed between May 14, 2018 and May 14, 2019, inclusive, (e) and was not returned by the postal service.

90. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

91. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and WCA.

92. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

93. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

94. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

95. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: May 14, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com
dmorris@ademilaw.com